UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ASHLI C. BOSSI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-60-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by anxiety, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had not met her burden of proof by a preponderance of the evidence that she had not engaged in substantial gainful activity ("SGA") since December 20, 2006, her amended alleged disability

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 9, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

onset date, Finding 1, Record at 12; that, alternatively, she had severe impairments of an anxiety disorder and opioid dependence, Finding 2, *id*. at 13; that her impairments, including substance abuse disorder, met Listings 12.06 and 12.09, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, *id*. at 14; that, in the absence of substance abuse, she would not have an impairment or combination of impairments that met or medically equaled any of the Listings, Finding 4, *id*. at 15; that, if she stopped her substance abuse, she would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: she retained the cognitive ability to perform unskilled work (*i.e.*, Specific Vocational Preparation ("SVP") levels one or two) and low-stress work (defined as work involving no public contact, requiring no more than occasional contact with supervisors or co-workers and no more than occasional decision-making, changes in the work setting, or judgment), Finding 5, *id*. at 16; that, if she stopped substance abuse, considering her age (33 years old, defined as a younger individual, on the date her application was filed), education (at least high school), work experience (no past relevant work), and RFC, there were a significant number of jobs in the national economy that she could perform, Findings 6-10, *id*. at 18-19; that her substance abuse disorder was a contributing factor material to the determination of disability, and that she had not been disabled at any time from the date of filing of the application through the date of the decision (October 29, 2008), Finding 11, *id*. at 19.  The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 4-6, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary*

*of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 1 of the sequential process, at which stage the plaintiff bears the burden of proving that she did not engage in SGA during the period in question.  *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995), *called into doubt on other grounds, Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001).  Work is considered "substantial" if it "involves doing significant physical or mental activities."  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.972(a)).  "[W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before."  *Id*.  "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.972(b)).  If a claimant is able to work at SGA level, the commissioner will find that he or she is not disabled.  *See* 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.971).

The administrative law judge alternatively reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in (i) reaching a Step 1 finding that is unsupported by any record evidence and (ii) making alternative findings concerning the materiality of substance abuse and mental RFC that are unsupported by any expert medical opinion and instead are plainly and impermissibly derived from review of the raw medical evidence.  *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 9) at 3-7.  At oral argument, counsel for the commissioner conceded that the Step 1 finding is unsupported by substantial evidence but defended the Step 5 finding as properly so supported.  I conclude, and recommend that the court find, that the Step 5 finding is flawed for the reasons given, requiring reversal and remand.

## I.  Discussion

The plaintiff's Step 5 point of error implicates a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability."  *Bartley v. Barnhart*, 117 Fed. Appx. 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C).

That Contract with America directive, in turn, was incorporated into the agency's regulations, which provide in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

>    (ii)   If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(b).

No medical source, whether a treating source or a Disability Determination Services ("DDS") consultant, stated that the plaintiff's substance abuse was material to a finding of disability. To the contrary, one treating source, counselor Andrea Brewster, stated that the plaintiff's limitations would continue in the absence of any current alcohol or drug abuse. *See* Record at 464-66 (Exhibit 22F). The administrative law judge disagreed, stating:

>    The claimant's counselor concluded that substance abuse is not material to the claimant's underlying anxiety disorder and that the claimant is unable to meet the demands of competitive employment (Exhibit 22F). This opinion is not adopted.
>
>    The determination whether drug and alcohol abuse is material to the finding of disability is not restricted to expert psychiatric opinion evidence. An administrative law judge is permitted to base a finding of materiality on his lay interpretation of the medical evidence. The regulations set forth in 20 C.F.R. § 404.1512(d)-(f) state that an administrative law judge may ask the claimant to attend a consultative examination at the Commissioner's expense, but only after the administrative law judge has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. § 404.1519a(a)(1). The regulations "normally require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b).
>
>    There is compelling evidence that the claimant's abuse of contraband drugs is material to the claim. In this claim, there is little subtlety: when the claimant was verifiably "clean", her symptoms were mild to moderate; when the claimant was verifiably "dirty", her symptoms were at least marked.

*Id.* at 15.

The regulations cited by the administrative law judge beg the question of whether "necessary information" was missing. *See* 20 C.F.R. §§ 404.1512(d)-(f), 404.1519a; *see also id.*

5

§§ 416.912(d)-(f), 416.919a.  As concerns a claimant's RFC (mental or physical), the First Circuit has provided relevant guidance: although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

The administrative law judge evidently did view the materiality question, in this case, as a common-sense judgment, stating that there was "little subtlety" in the claim.  *See* Record at 15.  Yet, as he elsewhere acknowledged, the plaintiff objected vigorously at hearing to the characterization of her symptoms as mild to moderate in nature when she was compliant with treatment and remained sober/clean, and there *is* record evidence supporting *her* position.  *See id*. at 17-18.  This includes evidence that, although the plaintiff was noted on March 26, 2007, to be "[m]uch improved" in her appearance and affect after withdrawing from heroin and commencing a course of treatment with suboxone, *see id*. at 291, she was noted at intervals during her subsequent period of sobriety to continue to exhibit sometimes intense anxiety, *see, e.g., id*. at 334 (note by Jessica Whitten, LCPC, dated October 3, 2007, that plaintiff "reports being extremely anxious and is continuously using the phrase 'what if' and discussing potential catastrophes that are several months away"), 367 (note by Brewster dated January 2, 2008, that plaintiff "presented as very nervous reporting she had been getting ready since 5:30 am"), 368 (note by Brewster dated December 26, 2007, that plaintiff presented for her session "with less anxiety than is characteristic" but that her "presentation was still highly anxious.  She was not tearful, but continued to have problems staying on topic and would often apologize.  She had problems sitting in one place."), 393 (note by Thomas Meek, D.O., dated May 19, 2008, that plaintiff was "anxious, easily distracted, hyperactive, and agitated").

At oral argument, counsel for the commissioner pointed out that the administrative law judge addressed that contrary evidence, finding the probative value of such reports diminished by the plaintiff's contemporaneous inattendance at counseling, her failure to be at her residence when a counselor went to treat her, in direct contradiction to repeated statements that she could not leave her residence, a description of her as an individual who attempted to manipulate the direction of a psychological consultation, her non-compliance with medication therapy, her inconsistent presentation in memory testing, and her admission at hearing that her symptoms worsen with the use of contraband drugs.  *See id*. at 18; *see also id*. at 415-17, 458.

Yet, even the cited records do not paint a clear picture susceptible of "common-sense" interpretation.  For example, while Brenda Butler, M.D., did note in a June 18, 2008, consultation report that the plaintiff (i) stated that she had not been taking prescribed Seroquel for fear of weight gain and had missed three counseling appointments because of difficulty going out in public, (ii) displayed an inconsistent presentation during memory testing, remembering specific details at certain points and failing to recall major themes at others, and (iii) was childlike and attempted to manipulate the direction of the consultation, *see id*. at 415-17, Dr. Butler also described her as having "a significant psychiatric presentation" and likely suffering from some symptoms of post-traumatic stress disorder, *see id*. at 417.  Further, while counselor Brewster did note that on July 9, 2008, the plaintiff was not at home when she arrived, she stated that the plaintiff arrived a few minutes later, explaining that she wanted Brewster to be proud of her and that she had gone out to take a drive around the block.  *See id*. at 458.  In terms of prior missed appointments, Brewster noted, as of July 9, 2008: "Treatment plan is missing due to client inattendance.  Treatment [h]as been arranged and client will receive in home therapy . . . . Continues to report severe anxiety and compulsive behaviors to manage the anx[ie]ty.  Ongoing

7

suicidal ideation. . . . Client isolates severely and this has interfered with the[ra]py in the past." *Id*.

In short, this was a complex case, with evidence that the plaintiff (i) was exaggerating her symptoms and even malingering, *see id*. at 264 (report of DDS consulting examiner Roger S. Zimmerman, Ph.D., dated February 8, 2007), and (ii) exhibited fewer symptoms when sober, *see, e.g., id*. at 350 (plaintiff noted to be "better than she was" when off heroin), but yet that she (iii) was kidnapped and brutally beaten by an assailant in July 2003, *see id*. at 188-90, 198-211, and (iv) continued to exhibit intense anxiety even when sober, *see, e.g., id*. at 334, 367-68, 393.[2] The administrative law judge ranged out of his depth when he determined, on the face of this raw medical evidence, that the plaintiff's substance abuse was material to a finding of disability.

A similar error pervades the administrative law judge's discussion of the plaintiff's mental RFC, in which he relied on a combination of interpretation of the raw medical evidence, a negative credibility finding, and rejection of the opinions of two treating sources, Brewster and Dr. Meek, to conclude that, when the plaintiff was "compliant with treatment and remain[ed] sober/clean, her symptoms [were] mild to moderate in nature." *Id*. at 17.[3]

---

[2] The plaintiff also claimed to have suffered other traumas, including a rape in Florida in 2006. *See* Record at 28-30. There is no contemporaneous evidence that she sought medical attention in the wake of that incident or reported it to the police. However, she presented to Maine Medical Center emergency room on December 2, 2006, with multiple abrasions on her arms that she said were self-inflicted, stating that she had been raped 1.5 months ago, left her husband secondary to guilt from the rape, and had begun abusing heroin again after she moved from Florida to Maine. *See id*. at 251-52.

[3] Brewster submitted two mental RFC assessments, dated February 1, 2008, and July 14, 2008, in which she indicated that the plaintiff had poor or no ability to undertake a number of work-related functions, such as dealing with work stresses, maintaining attention or concentration, understanding, remembering, and carrying out complex or detailed job instructions, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. *See* Record at 377-78, 464-66. Dr. Meek stated in a letter dated June 13, 2007, that it was his belief that the plaintiff "truly should qualify for disability secondary to her multiple psychologic comorbidities; these include anxiety, ADD [attention deficit disorder], and posttraumatic stress disorder. Also she has hepatitis C, which causes frequent episodes of fatigue. It should be noted that in 2004 the patient was kidnapped, held, beaten and tortured for a number of days. Due to this she has marked recurrent anxiety that prevents her from the majority of common social situations. She is currently on medication, in the care of a psychiatrist, and undergoing counseling." *Id*. at 284. Dr. Meek misunderstood or was misinformed that this incident occurred in 2004 and lasted a number of days. Contemporaneous records indicate that it occurred on the evening of July 17, 2003. *See id*. at
*(continued on next page)*

He may have relied *sub silentio* on the remaining expert mental RFC opinion of record, that of DDS nonexamining consultant Lewis F. Lester, Ph.D., dated April 11, 2007. *Compare* Finding 5, *id.* at 16 *with id.* at 282. Yet, for two reasons, that does not salvage the commissioner's Step 5 finding. The administrative law judge deviated from the Lester opinion in at least one material respect and, in any event, Dr. Lester did not have the benefit of significant new evidence submitted subsequent to issuance of his opinion, lessening the weight to which it might otherwise be entitled.

On the first point, the administrative law judge failed to adopt, or transmit to a vocational expert present at the plaintiff's hearing, Dr. Lester's finding that the plaintiff "can understand and remember simple, repetitive tasks and procedures[,]" although her "anxiety and depression preclude complex or detailed tasks." *Compare* Finding 5, *id.* at 16; *id.* at 53-55 *with id.* at 282. Instead, he found, and conveyed to the vocational expert, that the plaintiff was limited to performance of unskilled work, that is work with an SVP level of one or two. *See* Finding 5, *id.* at 16; *id.* at 53-55.

The deviation is significant. The vocational expert testified that a person with the hypothetical profile transmitted by the administrative law judge would be able to perform the representative occupation of mail clerk, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 209.687-026. *See id.* at 53-55. However, that job has a General Educational Development ("GED") reasoning level of three, *see* DOT § 209.687-026, which this court has held generally is beyond the capacity of a person limited to simple instructions or simple tasks, *see, e.g., Spearing v. Astrue*, No. 07-138-B-W, 2008 WL 2593790, at *3 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008); *Riley v. Astrue*, No. 06-95-B-W, 2007 WL

---

188-90, 206-11. Nonetheless, those records tend to corroborate that the plaintiff was dragged into a motor vehicle in a parking lot and severely beaten by an assailant who threatened to kill her. *See id.*

951424, at *4 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007).  Thus, if Dr. Lester's mental RFC is accepted, the plaintiff seemingly would be incapable of performing the job of mail clerk.[4]

In any event, as the plaintiff points out, *see* Statement of Errors at 7, Dr. Lester issued his opinion prior to the addition to the record of a significant volume of new material, including progress notes reflecting ongoing mental health treatment by Dr. Meek and counselors Brewster and Whitten, Dr. Meek's disability opinion, and Brewster's mental RFC opinions.  In the circumstances, the Lester opinion cannot alone constitute substantial evidence of the plaintiff's mental RFC.  *See, e.g., Alcantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007) ("As a non-examining psychologist, Musiker's opinion merited less *prima facie* credibility than treating and examining sources, and less credibility than more expert sources.  Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion."); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.  In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).[5]

---

[4] The vocational expert also testified, and the administrative law judge noted, that the restrictions transmitted in the hypothetical question would leave approximately 50 percent of the unskilled work base intact.  *See* Record at 19, 54.  This does not help the commissioner, both because it was elicited in response to a flawed hypothetical question and because "[w]here there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country[,]" Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-9p"), at 156.

[5] At oral argument, counsel for the commissioner contended that, while in this case the administrative law judge could properly make a common-sense assessment of the plaintiff's mental RFC based on the raw medical evidence, *(continued on next page)*

Because the administrative law judge relied on the vocational expert's testimony that a person with the posited RFC could perform the representative job of mail clerk, and the posited RFC cannot be discerned to be supported by substantial evidence of record, the commissioner's Step 5 finding cannot stand. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."). Remand and reversal accordingly are required.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

---

his assessment was, in addition, supported by those of several treating and examining sources that counsel characterized as "more liberal" (that is, finding greater capacity) than that of the administrative law judge, namely: (i) the February 8, 2007, report of Dr. Zimmerman that the plaintiff had "the capacity to be logical, coherent and engage in a purposeful discussion[,]" was "able to communicate, understand, concentrate and memorize[,]" appeared "able to follow instructions, although there may be some difficulties with attention and concentration in this area[,]" and was likely to exhibit a "somewhat variable" consistent range of social skills, *see* Record at 264, (ii) a September 21, 2007, progress note of counselor Whitten finding, on mental status examination, a congruent affect, logical and sequential thought processes, no evidence of delusions, orientation in all spheres, normal abstracting ability, only "mildly impaired" attention and concentration, and fair insight and judgment, *see id*. at 341, and (iii) a March 11, 2008, progress note of Dr. Meek finding the plaintiff's stress overall "very stable[,]" *id*. at 395. This argument illustrates the pitfalls of a layperson's interpretation of raw medical evidence in this case. Dr. Lester, who had the benefit of Dr. Zimmerman's report, noted that Dr. Zimmerman's testing, among other evidence, indicated that the plaintiff had "adequate memory and verbal comprehension for *simple tasks*." *Id*. at 282 (emphasis added). Whitten, on mental status examination on the date in question, made not only the above-referenced findings but also noted that the plaintiff's mood was "anxious[,]" her "[m]emory functions were deficient (immediate, recent, remote)[,]" and "[h]er general behavior during the interview was distractible." *Id*. at 341. Whitten went on to state, in a separate "Summary" section, that the plaintiff presented "with significant anxiety, restlessness, and sadness." *Id*. With respect to Dr. Meek's progress note, I am at a loss to understand how his assessment of the plaintiff's stress as "very stable" on the date in question sheds light on her functional capabilities that day. *See id*. at 395.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge